UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-23670

NORRIS ATESIANO,

    Plaintiff,

vs.

THE TAX TEAM, INC.
and AILEEN GUILLEN,

    Defendants.
_____/

# COMPLAINT

COMES NOW, Plaintiff, Norris Atesiano, sues Defendants, The Tax Team, Inc. and Aileen Guillen, based on the following good cause:

### *PARTIES, JURISDICTION, AND VENUE*

1. **Plaintiff, Norris Atesiano**, was and is a *sui juris* resident of Miami-Dade County, Florida, at all times material. He was and is an hourly non-exempt employee of the Defendants, as the term "employee" is defined by 29 U.S.C § 203 (e) who consents to participate in this lawsuit.

2. **Defendant, The Tax Team, Inc.,** is a *sui juris* Florida for-profit corporation with its principal place of business and registered agent in this District and it conducts its for-profit business in Miami-Dade County.

3. **Defendant, Aileen Guillen,** was and is an owner / officer / director of the corporate Defendant for the ("relevant time period"). She ran the day-to-day operations, made financial decisions for the corporate Defendant, had supervisory authority over Plaintiff, was

1

responsible for paying Plaintiff's wages for the relevant time period, and controlled Plaintiff's work and schedule.

4. Defendants were Plaintiff's direct employers, joint employers and co-employers, as that term "employer" is defined by 29 U.S.C. §203 (d).

5. All Defendants employed Plaintiff.

6. This Court has jurisdiction over Plaintiff's FLSA claims.

7. Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because Defendants transact business in this District, because the corporate Defendant maintains its principal place of business in this District, and because most if not all of the operational decisions were made in this District, while Plaintiff worked in Miami-Dade County, where payment was to be received.

### *Background Facts*

8. Defendants have been at all times material engaged in interstate commerce in the course of their tax preparation services for others which, traditionally, cannot be performed without using goods, materials, supplies, and equipment that have all moved through interstate commerce.

9. Defendants also communicate with their workers by regularly and routinely using telephones, internet, and/or facsimiles.

10. Furthermore, Defendants engage in interstate commerce in the course of their income tax preparation services for clients to the Internal Revenue Service.

11. Upon information and belief, the Defendants had gross sales or business done in excess of $500,000 annually for the years 2016, 2017, and 2018.

12. Upon information and belief, the Defendants' gross sales or business is expected to exceed $500,000 for the year 2019.

13. In particular, Defendants own and operate an income tax return preparation and filing services company that provides these services to their customers at their offices using computers, software, phones, computer networking equipment, toner, printers, pens, supplies, furniture, phone systems, and other materials and supplies that were previously placed in the stream of commerce from outside of the State of Florida before being received in this District to engage in interstate commerce.

14. Plaintiff worked in a non-exempt capacity for Defendants.

15. In particular, Plaintiff worked for Defendants as an Income Tax Return Preparer from October 3, 2016, through on or about July 31, 2019.

16. When Plaintiff worked as an Income Tax Return Preparer his duties included preparing income taxes for individuals and companies, identify potential tax credits and liabilities, and ensure accurate and complete returns are filed in a timely manner.

17. Moreover, Plaintiff also worked for Defendants as a Store Manager from approximately October 1, 2017, through on or about July 31, 2019.

18. When Plaintiff worked as a Store Manager his duties included interviewing employees, training them, and scheduling their work hours for the week, including still being responsible for completing the duties as an Income Tax Return Preparer.

19. To the extent that records exist regarding the exact dates of Plaintiff's employment exist, and of the times he worked each work day, such records are in the exclusive custody of Defendants.

20. From approximately October 3, 2016, through October 16, 2016, Defendants required that Plaintiff attend a mandatory training at the Defendants' place of business for approximately 40 hours within this time period, and Defendants failed to pay Plaintiff minimum wage of $7.25 for each hour Plaintiff attended said mandatory training.

21. Thereafter, from approximately January 2, 2017, through April 23, 2017, Defendants' agreed to pay Plaintiff 30% commission of each Income Tax Return Prepared and filed while on a 36 hours per week work schedule.

22. However, from approximately January 2, 2017, through April 23, 2017, Defendants' failed to pay Plaintiff minimum wage of $7.25 for 320 hours Plaintiff worked off the schedule within this time period.

23. Thereafter, from approximately May 1, 2017, through September 30, 2017, Plaintiff continued working for Defendants another 220 hours assisting Defendants' customers, which Defendants' again failed to pay Plaintiff minimum wage of $7.25 per hour for each hour worked within this time period.

24. From approximately October 1, 2017, through December 31, 2017, Plaintiff continued working for Defendants another 90 hours assisting Defendants' customers, which Defendants' again failed to pay Plaintiff minimum wage of $7.25 per hour for each hour worked within this time period.

25. Thereafter, from approximately January 1, 2018, through April 22, 2018, Defendants' agreed to pay Plaintiff $875.00 per week plus 5% commission within this time period.

26. However, from approximately May 1, 2018, through July 31, 2018, Plaintiff continued working for Defendants' another 130 hours assisting Defendants' customers, which

Defendants' again failed to pay Plaintiff minimum wage of $7.25 per hour for each hour worked within this time period.

27. Thereafter, from approximately August 1, 2018, through September 30, 2018, Plaintiff continued working for Defendants' another 135 hours assisting Defendants' customers, which Defendants' again failed to pay Plaintiff minimum wage of $7.25 per hour for each hour worked within this time period.

28. From approximately December 3, 2018, through December 16, 2018, Plaintiff continued working for Defendants' another 50 hours assisting Defendants' customers, which Defendants' again failed to pay Plaintiff minimum wage of $7.25 per hour for each hour worked this time period.

29. Thereafter, from approximately January 1, 2019, through April 21, 2019, Defendants' agreed to pay Plaintiff $875.00 per week plus 5% commission within this time period.

30. However, from approximately May 1, 2019, through July 31, 2019, Plaintiff continued working for Defendants' another 195 hours assisting Defendants' customers, which Defendants' again failed to pay Plaintiff minimum wage of $7.25 per hour for each hour worked within this time period.

31. Any/all conditions precedent to filing this lawsuit occurred and/or was satisfied by Plaintiff.

32. Plaintiff retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

### COUNT I. FLSA  MINIMUM WAGE VIOLATION

Plaintiff reincorporates and re-alleges paragraphs 1-32 set forth fully herein and further alleges as follows:

33. Defendants willfully and intentionally refused to pay Plaintiff at least a minimum wage of $7.25/hour for each unpaid hour for the hours worked from approximately October 3, 2016 to July 31, 2019.

34. Plaintiff alleges he notified Defendants on various occasions about the discrepancy, but Defendants refused to pay him.

35. Defendants either recklessly failed to investigate whether their failure to pay Plaintiff at least a minimum wage for the hours worked from approximately October 3, 2016 to July 31, 2019, violated the Fair Labor Standards Act, they intentionally misled Plaintiff to believe that Defendants were not required to pay him at least minimum wage for all the hours worked from approximately October 3, 2016 to July 31, 2019, and/or Defendants concocted a scheme pursuant to which they deprived Plaintiff the minimum wage pay earned for the hours worked from approximately October 3, 2016 to July 31, 2019.

36. Plaintiff is entitled to a back pay award of at least his proper minimum wage rate for all hours worked from approximately October 3, 2016, through July 2019, plus an equal amount as a penalty, plus attorneys' fees and costs.

WHEREFORE, Plaintiff, Norris Atesiano, demands the entry of judgment in his favor and against the Defendants, The Tax Team, Inc., and Aileen Guillen, after trial by jury and as follows:

    a. That Plaintiff recover compensatory overtime wage damages and an equal amount of liquidated damages as provided under the law and in 29 U.S.C § 216(b);

b.  That Plaintiff recover prejudgment interest if he is not awarded liquidated damages;

c.  That Plaintiff recover an award of reasonable attorney fees, costs, and expenses pursuant to the FLSA;

d.  That Defendants be Ordered to make Plaintiff whole by providing appropriate minimum wage pay and other benefits wrongly denied in an amount to be shown at trial and other affirmative relief;

e.  That Plaintiff recover all interest allowed by law; and

f.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this 3rd day of September, 2019.

Respectfully submitted,

**PEREGONZA LAW GROUP, PLLC**
1414 NW 107th Ave, Suite 302
Doral, FL 33172
Tel.   (786) 650-0202
Fax.   (786) 650-0200
Email: office@peregonza.com
Attorneys for Plaintiff

By: */s/ Gadiel A. Espinoza, Esq.*
Gadiel A. Espinoza, Esq.
Florida Bar No. 121831
gadiel@PereGonza.com